# EXHIBIT

# 8

December 11, 2015

FROM: Mackall, Toby R. MAJ, ▆▆▆▆▆▆▆▆

TO: Honorable, Eric K. Fanning, Secretary of the United States Army

SUBJECT: Request for Office Call with Secretary of Defense, Honorable Ash Carter

Sir,

My name is MAJ Toby R. Mackall, U.S. Army, active duty, 20 years of service, stationed in Aberdeen Proving Ground, Maryland. I write this letter to you in support of my office call request emailed on 3 December 2015, requesting to see the Secretary of Defense under "open door" parameters. As mentioned in the email correspondence, the intent of the office call is to disclose perceived wrongdoings and alleged corruption, retaliation, and reprisal associated with my swift removal as Battalion Executive Officer (XO) of the 49th Transportation Battalion, the unit that experienced the Active Shooter incident on 2 April 2014. I was the most senior person of the command present during initiation of the attack, but was excluded from the Department of the Army investigation into the circumstances that led to the incident.

I was informed I was being removed due to reports of being insensitive to victims of the attack. I immediately disputed the allegations as they were not true, nor were they based on factual evidence. I alleged my removal was to prevent further disclosure of significant command climate issues on-going in the organization, which the Battalion and Brigade Commander failed to resolve for 90 days preceding the event. These same issues, in my professional opinion, led to the culture and actions that contributed to the NCO (Sergeant First Class/E-7) who challenged the decision and authority of the Battalion and Company Commander who agreed to grant SPC Lopez authorization for Leave, starting 2 April 2014. For over six hours, SPC Lopez attempted to resolve the conflict, to include requesting assistance from his company Orderly room. The Soldier's actions that day, in response to these issues, were horrific, and obviously not the way to respond. How his unit supported him, prior to the incident, was substandard, and should be addressed as these actions were outside the policies and procedures of the command. Because of the magnitude of the loss of life surrounding the incident, more responsibility and accountability should be considered for those who failed to address the command climate that, in my professional opinion, contributed to that day's event. I respectfully ask your consideration in scheduling me an office call with the SecDef, so I can disclose the circumstances surrounding the above allegations and to request an administrative review, investigation, or organized hearing to accurately account for what happened prior to and after the shooting.

Since my removal from the organization, I immediately began communicating retaliation, reprisal, and corruption. I requested a 15-6 Investigation in an effort to dispel the allegations of insensitivity. My commanding general, BG Clark LeMasters stated the 15-6 would only investigate areas which contributed to the Brigade Commander's decision to remove me. He

stated the separate IG complaint would investigate the statements of misconduct and the DA level investigation would look into events that occurred during the shooting and following days. Instead, the 15-6 was used to present discrediting information regarding my leadership, which I continue to perceive as an effort to discredit my IG complaint filed prior to the shooting. The 15-6 investigation appears to be an effort to disclose staff members personal feelings regarding my leadership style and their view of my actions on 2 April. Myself and the Battalion Chaplain were able to exit the conference room after initiation of the attack, which the 15-6 appeared to focus on versus the allegations of insensitivity that was the basis of my removal.

In June of 2014, I filed an official Article 138 complaint on my Brigade Commander for his decision to remove me. I provided the complaint to my superior commissioned officer (BG Clark LeMasters), whom then forwarded it to the General Court Martial Convening Authority (GCMCA) for the Brigade Commander. The Article 138 complaint was addressed to LTG Milley, the III Corps Commander at that time.

It is alleged that III Corps mishandled the Article 138 complaint and attempted to cover up this failure by recreating the III Corps Commanders response in March of 2015. This inaction restricted my communication to senior Army officials regarding allegations surrounding the 2 April incident.

In March 2015, I emailed the above concerns to GEN Odierno, requesting a 15-6 Investigation to look into the allegations of corruption, reprisal, and retaliation. He responded requesting I attempt to handle it through the FORSCOM Commander, GEN Milley. GEN Milley stated he would initiate a 15-6 and look into the matters. I later determined a 15-6 was not initiated. I sent a followup email to GEN Odierno requesting assistance. He did not respond to my second request.

Sir, I ask for your consideration in initiating an administrative review, investigation, or hearing regarding the above allegations. **I am a whistleblower, who attempted to correct a poor command climate 90 days before the shooting, but was ultimately discredited as the source of the climate issues, to divert attention from my leaders' failure to resolve issues presented**. It is my continued perception, this was done to prevent unit leaders from being held responsible for their failure in operating in accordance with Army Command Policy, AR 600-20, chapters, 1-5c, 2-1, 4-1, 4-14b (1,4,5), 5-8.

Facts:

- Service-member (SM) submitted two statements of senior leader misconduct (Command Sergeant Major, 1st Lieutenant), 90 days prior to 2 April 2014 shooting incident.
- SM filed an IG complaint 27 March 2014, regarding lack of command resolution to reported misconduct
- Brigade Commander initiated an office call with MAJ Mackall, 31 Mar 2014, to address IG complaint filed with the 13th Sustainment Command IG office. Brigade Commander stated he felt "blind-sided" by the IG complaint. Brigade Commander stated he knew of the allegations for 30 days.
- IG office informed the Brigade Commander of the complaint, but did not inform the 13th Sustainment Command, BG Clark LeMasters
- SM was a victim of the 2 April 2014 shooting incident.

Case 1:17-cv-00865-ELH   Ex. 8 pg. 3 of 6

- SM and incoming Battalion Chaplain escaped the conference room at initiation of the attack
- SM established a rally point, cleared the remaining portion of the building, directed stop movement outside the headquarters building, communicated "active shooter" to people walking around outside with no knowledge of events occurring, moments prior to shooter returning to Battalion area
- SM accompanied Battalion Commander and Command Sergeant Major, the night of the shooting, to view and confirm identity of deceased personnel
- SM attended and promoted others to attend Behavioral Health sessions following the attack, to include coordination with Embedded Behavioral Health Team, led by LCDR Simpson
- SM removed from position of leadership, not suspended, without an investigation or due justice as a result of allegation of insensitivity to victims.
- SM removed from the rating chain of one subordinate, after completion of rating period and concurrence with Senior Rater. Same 1st Lieutenant (1LT) accused of senior leader misconduct
- SM submitted a 138 Complaint in June 2014 to III Corps, Fort Hood, Texas alleging corruption, retaliation, and cover-up associated with the Fort Hood Shooting
- Article 138 Complaint was not forwarded to the Department Secretary until April 2015, after SM initiated communication with GEN Odierno.
- DAIG review of IG complaint determined Article 138 was mishandled through legal channels
- Officer reviewing the Article 138 Complaint, on behalf of the Secretary of the Army, was subordinate in rank (Brigadier General) to the General Courts Martial Convening Authority for Brigade Commander (Lieutenant General). Officer determined the GCMCA acted properly regarding Article 138 complaint

Summary of Allegations and Grievancies:

- Violation of Constitutional rights (right to be presumed innocent until proven guilty). No investigation conducted prior to SM being removed to validate allegation of insensitivity to victims. Unit used a post-dated investigation I requested, to validate reasoning for removal after the fact.

- Victim of alleged Whistleblower and reprisal from Chain of Command: 1) SM submitted an IG complaint one week prior to the active shooter event regarding senior leader misconduct. 2) SM submitted two each statements of senior leader misconduct in December 2013 that was not properly addressed/corrected by unit leaders. Unit leaders and special staff personnel (unit-level Staff Judge Advocate and Inspector General) suspected of improperly assessing allegations against SM's subordinates as unprofessionalism versus misconduct in order to prevent investigation of senior leaders)

- Insensitivity to victim and family of 2 April 2014 Fort Hood, Texas Shooting. SM was removed from position within three weeks of active shooting event. SM was in the

immediate area (fled conference room during initiation of attack, escaping with one other SM by breaking glass in office window).

- <u>Unit leaders suspected of interfering with the Department of the Army investigation of the 2 April 2014 shooting by removing victim in close proximity of the event and with knowledge of command climate issues (presented officially before the shooting)</u>. SM was removed from position three days before initiation of the investigation. SM was the most senior person in the building during the shooting and supervisor of the staff personnel that were victims of the incident, but was never questioned regarding involvement or unit operations that may have contributed to the incident. Chain of command suspected of removing SM to prevent further disclosure of command climate issues that existed in the organization prior to the shooting, that went un-checked. **Unit suspected of discrediting my leadership in an effort to downplay the command climate issues I was attempting to address and correct 90 days earlier.**

- Abuse of Authority. Brigade and Battalion commander removed Field Grade officer from rating chain of subordinate officer (Lieutenant) after completion of evaluation period and evaluation. Presented inflated Officer evaluation on sub-standard officer (same officer suspected of misconduct that was not investigated). Removed original rater's name and negative comment, but kept preponderance of comments (plagarism) on officer evaluation in order for officer to have favorable report for promotion board.

- Abuse of Authority: 13th Sustainment Command Inspector General (IG) Office and 4th Sustainment Brigade Staff Judge Advocate (SJA). The 13th Sustainment Command IG office and 4th Sustainment Brigade Staff Judge Advocate (SJA) are suspected of being derelict in their duties as both staffs potentially did not provide proper counsel to the command regarding allegations presented of senior leader misconduct. The SJA and Brigade Commander stated it was not misconduct or a violation of the UCMJ for a Command Sergeant Major (enlisted rank) and 1st Lieutenant (officer rank) to have closed door sessions regarding the leadership of a superior officer while communicating a plan to have the same officer removed from the organization (subject of statement provided to the chain of command on 17 December 2013).

- Abuse of Authority: Detailed DAIG investigating officer for Whistleblower Reprisal Case DIH# 15-6122, suspected of not fully investigating whistleblower and reprisal complaint, specifically the contents of the original protected communication I felt reprised for. Investigating officer suspected of restating findings from the 15-6 Investigation instead of conducting an independent investigation.

- Abuse of Authority: Officer reviewing Article 138 Complaint, on behalf of the Secretary of the Army failed to address lapse in time of processing complaint, failure to send communication of the results to the complainant and Department of the Army, and

Case 1:17-CV-00865-ELH   Ex, 8   pg. 5 of 6

allegations of mishandling as identified by the DAIG. Additionally, failure of III Corps to address allegations of reprisal and retaliation mentioned in June 2014.

Allegations against III Corps, Fort Hood, Texas

- III Corps did not submit a true statement of the complaint to the Secretary until I submitted a DAIG complaint and made contact with GEN Odierno and GEN Milley (8 months after the fact). I did not receive notification As of 5 Aug 2015, 14 months after the fact, the 138 complaint and III Corps Commanding General's response has yet to reach the Secretary)

- III Corps suspected of not actioning the complaint when received from MG LeMasters in June of 2014. GEN Milley and LTG MacFarland change of command (13 Aug 2014) took place 57 days after the Article 138 complaint was given to MG LeMasters.

- III Corps suspected of not examining the allegations of the complaint or taking proper measures to redress the wrong until Spring of 2015 (8 months after complaint submitted). Complainant never questioned or asked to discuss matters included. Complaint contained allegations of reprisal and potential corruption existing within a Brigade HQ, but III Corps CG did not direct an inquiry to look into the matter).

- III Corps suspected of re-creating a response to the 138 Complaint in the Spring of 2015, stating it was originally actioned in August of 2014. (III Corps stated it could not find the original response, nor did III Corps attempt to contact myself from June 2014 through Spring 2015. Contact only made after DAIG and communication with GEN Odierno and GEN Milley (8 months after the fact). Within a 3-4 day period, III Corps initially stated they could not find the CG's original response, then stated they were providing a current response, which was the same response as originally determined by the Commanding General, finally stating they found the original response. (suspected of re-creating response in an effort to cover-up failure to process as mandated)

- III Corps suspected of restricting the communication of the complainant (whether intentionally or un-intentionally as a result of failing to process complaint) to senior Army officials in order to prevent disclosure of command climate and leadership issues within the unit experiencing an active shooter incident.

Sir, I request your assistance to resolve the above allegations and wrongdoings I've attempted to disclose and correct since April 2014. I ask for your consideration in approving my request to see the SecDef, for his consideration in initiating the following actions: 1) Administrative Review of the allegations presented by an independent panel, to include investigation of command climate

Case 1:17-CV-00865-ELH Ex. 8 pg. 6 of 6

issues the unit experienced prior to and after the shooting incident, which in my professional opinion, contributed to the horrific actions of SPC Lopez. 2) Based on the outcome of the Review, hold accountable, any and all leaders and responsible management officials (RMOs) who aided in the cover-up by intentionally or unintentionally not performing their responsible duties as directed. 3) Based on the outcome of the Review, provide written explanation to the family members of the deceased and injured, regarding findings (if Review determines allegations presented are substantiated) 4) Implement additional training to commanders and command sergeant major population regarding Army Command Policy and Whistleblower protection and Reprisal prevention. 5) Based on the outcome of the Review, provide written letter of apology to the spouse and children of MAJ Toby Mackall, as they too were impacted by the actions of unit leaders. 6) Short article in the Army Times disclosing the results of the review and what actions learned to prevent another Army unit or organization from experiencing a similar event.

I do not seek any personal gain or favor for attempting to disclose and correct the allegations and wrongdoings provided. I am embarrassed professionally, that I have to take these steps to disclose the truth.

Your consideration and support is appreciated.

Respectfully,

MAJ Toby R. Mackall