**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **TOBY R. MACKALL** | * | |
| **Plaintiff,** | * | |
| **v.** | * | **Civil No. 17-cv-774-RDB** |
| **UNITED STATES DEPARTMENT OF DEFENSE,** | * | |
| **Defendant.** | * | |

* * * * *

| | | |
|---|---|---|
| **TOBY R. MACKALL** | * | |
| **Plaintiff,** | * | |
| **v.** | * | **Civil No. 17-cv-865-ELH** |
| **CLARK W. LEMASTERS, JR., ET AL.,** | * | |
| **Defendants.** | * | |

* * * * *

**<u>REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS</u>**

*"It was the [Executive Officer]'s meeting and he left us."*[1]

## I. INTRODUCTION

How would any of us respond to the unmistakable sound of gunshots ringing out in our workplace? It is impossible for nearly any reader of these filings --- not including Plaintiff --- to understand the horror that must have washed over each member of the 49th Movement Control

[1] ECF No. 10-2 at 4 (May 22, 2014 Memo, quoting CPT Guikema's discussion of the April 2, 2014 active shooter event).

Battalion ("MCB") as an active shooter made his way through the premises. No person can know how he would react to such a nightmare. For Plaintiff, his reaction was to run --- which is not the subject of ridicule or shame. It simply is what it is. None of us can be sure we would behave any differently in those terrible circumstances, and we can only hope we never find out.

However, Plaintiff's action --- or inaction --- had consequences for his ability to lead his team. When Plaintiff ran out of that conference room into an empty office and left through a window, he abandoned a group of people who had been under his leadership. They watched him turn his back and run away, leaving them to the nearing gunshots and their fate. The team did not all make it out alive. The shooter murdered Sergeant First Class ("SFC") Ferguson as SFC Ferguson tried to prevent the shooter from massacring those remaining in the meeting room.

How could Plaintiff continue to lead those people? How could he hope to command the same respect or authority as he had before he fled? He could not; not one of us could. Members of Plaintiff's unit lost faith in him as a leader, questioning whether they could follow him into battle or trust their lives to his leadership during deployment. Army officials correctly recognized this shift in staff climate and recommended a change of duty for Plaintiff, following all relevant procedures to remove him from his Executive Officer ("XO") position.

Plaintiff now sues, alleging a host of violations and defending his actions during the active shooter event. There is no need for Plaintiff to defend his instinctual reaction during that terrible crime. But still, his action had consequences for his ability to lead, which the Army assessed and addressed with a change of duty. Courts rightly refuse to intervene in such military decisions, and this Court should make the same decision here. As set forth in the Government's initial motion, none of Plaintiff's claims can survive a motion to dismiss. Plaintiff's reply does not cure any of the defects of his filing.

## II. ARGUMENT

### A. Plaintiff cannot make out any constitutional claims related to his army service, because courts may not interfere with military judgment in claims that are incident to service.

The Government's motion to dismiss argued that Plaintiff's constitutional claims must be dismissed because there can be no cause of action arising from Plaintiff's military service.[2] In response, Plaintiff asks this Court to convert his claim under Section 1983 to a *Bivens* claim and argues that his *Bivens* claims should survive because they do not relate to management or supervision of the military but rather to the deprivation of his rights.[3] This argument does not save his claims.

The Supreme Court, the Fourth Circuit, and this Court have all been clear that individuals do not have a cause of action for claims that are incident to active duty military service --- even constitutional claims like Plaintiff's.[4] As the Fourth Circuit observed, the Supreme Court has never recognized a *Bivens* remedy in the military context for claims arising from one's service.[5] There are no bright-line rules for determining whether a claim is "incident to service," but the Supreme Court has held that if a claim makes allegations relating to "discipline" and "control" of a military serviceman, such a claim is typically "incident to service" and is not cognizable.[6] The Court has also held that commanding officers should not be forced to defend their decisions involving discipline or military composition in civilian courts.[7] As the Fourth Circuit explained,

---

[2] Gov. Mem. at 8--11, 16--17.
[3] Pl. Resp. at 16.
[4] *See, e.g., United States v. Shearer*, 473 U.S. 52, 57--58 (1985); *Cioca v. Rumsfeld*, 720 F.3d 505, 510 (4th Cir. 2013); Kendzior v. Gates, No. ELH-12-2184, 2014 WL 773330, at *2 (D. Md. Feb. 24, 2014).
[5] *See Cioca*, 720 F.3d at 510.
[6] *Shearer*, 473 U.S. at 57--58. *See also, Cioca*, 720 F.3d at 512--513 (explaining *Shearer* rule).
[7] *Shearer*, 473 U.S. at 58.

if a plaintiff's alleged injuries "stem from the relationship between the plaintiff and the plaintiff's service in the military, the 'incident to service' test is implicated."[8] This is true regardless of whether the offending actions are consistent with the military's mission.[9]

MAJ Mackall's constitutional claims all stem from his active-duty military service and implicate his chain of command's decision to change his duty in response to military need. The Supreme Court has refused to provide a remedy to soldiers such as Plaintiff who seek "a *Bivens*-type remedy against their superior officers," instead leaving these matters up to the military establishment.[10] Plaintiff's case falls within such territory reserved for military judgment --- an area in which civilian courts do not interfere --- and mandates dismissal.

**B. Plaintiff's tort claims are both "incident to service" and barred by the Westfall Act and must be dismissed.**

For the same reasons discussed above, Plaintiff's tort claims are incident to his military service and must be dismissed. The Supreme Court held in *Feres* that the FTCA does not authorize suits by service members that "arise out of or are in the course of activity incident to service."[11] Using the same guidelines already discussed with regard to Plaintiff's constitutional claims, Plaintiff's tort claims all arise from his military service must be dismissed to avoid second-guessing military decisions concerning composition, discipline, and control of the military force.

Plaintiff's claims against individual defendants are barred by the Westfall Act, which provides federal employees absolute immunity from all common-law tort claims arising out of

---

8 *Cioca*, 720 F.3d at 515.
9 *Id.*
10 *Chappel v. Wallace*, 462 U.S. 296, 304 (1983).
11 *Feres v. United States*, 340 U.S. 135, 146 (1950).

actions taken within the scope of their employment and substitutes the United States as a party. 28 U.S.C. § 2679(b)(1). Plaintiff responds that his superior officers acted "with negligence and outside the scope of [their] employment,"[12] but this is both a legal conclusion not entitled to an assumption of truth and legally irrelevant. Even if Plaintiff's allegations of wrongdoing were true, by its own statutory text the Westfall Act applies equally to negligent and wrongful acts.[13] Courts have found Westfall immunity for far more egregious intentional torts committed in the military context than those alleged here. For example, the D.C. Circuit Court applied Westfall Act immunity to military members who committed acts of torture while stationed abroad.[14] Even if the individual defendants in this case committed intentional torts against Plaintiff, they would still fall within the protection of the Westfall Act, necessitating their dismissal.

**C. Plaintiff failed to exhaust his administrative remedies in tort.**

The Government's motion set forth the ways in which Plaintiff failed to exhaust his administrative remedies under the FTCA.[15] In response, Plaintiff avers that he "attempted to exhaust administrative remedies."[16] Plaintiff's efforts to exhaust are not sufficient to actually exhaust his remedies. Here, Plaintiff failed to file an administrative claim with the Army's Claims Service.[17] Although Plaintiff lists several steps he has taken to file an administrative claim with the Army, he does not say he ever filed an administrative claim with the U.S. Army Claims Service.[18] A records search indicated that he never did.[19] His claims are unexhausted

---

[12] Pl. Resp. at 15.
[13] 28 U.S.C. § 2679(b)(1).
[14] *Ali v. Rumsfeld*, 649 F.3d 762, 774--75 (D.C. Cir. 2011).
[15] Def. Mot. at 15--16, 18--19.
[16] Pl. Resp. at 10--11.
[17] Def. Mot. at Ex. 3 (affidavit of Connie M. McConahy, Army Claims Service).
[18] Pl. Resp. at 10--11.
[19] Def. Mot. at Exhibit 3 (affidavit of Connie M. McConahy, Army Claims Service).

and warrant dismissal on jurisdictional grounds for that failure.[20]

## III. CONCLUSION

Plaintiff's remaining arguments have been fully addressed in the government's initial motion. Plaintiff, like those in his battalion, were victims of terrible violence at the hands of an active shooter on base. Although Plaintiff's actions during that shooting were only human, his superior officers needed to make personnel decisions in the fallout. Decades of judicial precedent instruct courts not to intervene in such military decisions. For the reasons set forth above and in the government's motion, Plaintiff's complaint must be dismissed in its entirety for failure to state a claim and lack of subject matter jurisdiction.

Respectfully submitted,

STEPHEN M. SCHENNING
Acting United States Attorney

/s/
Molissa H. Farber
Assistant United States Attorney
36 S. Charles Street, Fourth Floor
Baltimore, Maryland 21201
(410) 209-4862
Molissa.Farber@usdoj.gov

[20] *Henderson v. United States*, 785 F.2d 121, 123 (4th Cir. 1986) ("[T]he requirement of filing an administrative claim is jurisdictional and may not be waived.").

**CERTIFICATE OF SERVICE**

I certify that on August 28, 2017, a copy of the foregoing Reply in Support of Defendants' Motion to Dismiss was caused to be served by filing that document with the Clerk of the Court under the Court's CM/ECF system, which electronically transmits a copy to the registered participants as identified on the Notice of Electronic Filing, and paper copies were mailed by first class mail, postage prepaid, to those identified as nonregistered participants:

Toby Roberto Mackall
1612 Shirley Avenue
Joppa, MD 21085

Major General Clark W. LeMasters Jr.
6501 E. 11 Mile Road
Warren, Michigan 48397

Colonel Timothy D. Luedecking
1400 Defense Pentagon
Washington, DC 20301

Lieutenant Colonel Myron L. Bell
103 3rd Avenue
Fort Lesley J. McNair
Washington, DC 20319

Major Matthew D. Tobin
1400 Defense Pentagon
Washington, DC 20301

/s/
Molissa H. Farber
Assistant United States Attorney